# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| LILLIAN GIBBONS, | : | Case No. 3:18-cv-189 |
| Plaintiff, | : | |
| vs. | : | District Judge Walter H. Rice |
| | : | Magistrate Judge Sharon L. Ovington |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATIONS[1]

**I.     Introduction**

Plaintiff Lillian Gibbons brings this case challenging the Social Security Administration's denial of her applications for period of disability, Disability Insurance Benefits, and Supplemental Security Income. She applied for benefits on February 23, 2015, asserting that she could no longer work a substantial paid job. Administrative Law Judge (ALJ) Gregory G. Kenyon concluded that she was not eligible for benefits because she is not under a "disability" as defined in the Social Security Act.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #8), the Commissioner's Memorandum in Opposition (Doc. #12), Plaintiff's Reply (Doc. #13), and the administrative record (Doc. #5).

---

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Kenyon's non-disability decision.

## II. Background

Plaintiff asserts that she has been under a "disability" since June 10, 2011. She was thirty years old at that time and was therefore considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c). She has a limited education. *See id.* §§ 404.1564(b)(3), 416.964(b)(3).[2]

### A. Plaintiff's Testimony

Plaintiff testified at the hearing before ALJ Kenyon that she has had back pain since she was nineteen years old. (Doc. #5, *PageID* #87). She has constant pain that is mostly aching but is sometimes really sharp. *Id.* at 88. Her pain goes down her left leg. *Id.* Her leg "goes in and out from time to time." *Id.* at 88-89. On a scale from one to ten, her pain is usually at eight but some days it goes above ten. *Id.* at 88. If it is cold, she is in a lot more pain. *Id.* at 103.

She has tried several forms of treatment. She had eight sessions of injections. *Id.* at 89. They helped "[s]omewhat, but not really. It caused more pain than it did anything." *Id.* She has also tried a TENS unit. *Id.* She wears a back-brace part of the time. *Id.* at 90-91. It helps support her lower back. *Id.* at 91. At the time of the hearing she was looking for a new pain-management doctor. *Id.* at 88.

---

[2] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

2

Because of her back problems, she cannot sit for long periods—usually her limit is thirty minutes. *Id.* at 89-90. If she tries to do light housework, she has to take breaks to lie down and rest. *Id.* at 90. She can only stand for fifteen to twenty minutes before it starts to hurt really bad. *Id.* She does not walk because it causes pain. *Id.* She starts to feel pain even if she walks two blocks—from her house to her dad's house. *Id.*

Plaintiff has a history of seizures. She had her first one in 2015 and went to the hospital. *Id.* at 91. The hospital released her and on the way home, she had a second seizure. *Id.* She was in the hospital for a week. *Id.* She has not had another seizure since.

Additionally, Plaintiff has a history of pulmonary embolisms. *Id.* at 102. She also has some ongoing respiratory issues; she gets short of breath at least four times a day. *Id.* She uses an Albuterol inhaler. *Id.*

Plaintiff struggles with anxiety and panic attacks. *Id.* at 92. Generally, when she is going to an unfamiliar place with unfamiliar people, her anxiety is high and she has panic attacks where she gets shaky and sweaty. *Id.* at 92-93. She tries to do a breathing technique that her therapist taught her to calm herself down. *Id.* at 93. Other than taking her kids to school, Plaintiff leaves her house two or three times per week. *Id.* at 92. Usually, she goes to her friend's house, nine houses down the street. *Id.* at 93. If she goes to the grocery, she gets really nervous, panicky, and always on alert. *Id.* She does not go to the mall because there are too many people. *Id.*

Plaintiff also has post-traumatic stress disorder. She has flashbacks of the guy that beat her up about every three days. *Id.* at 94. She also has nightmares. *Id.* As a result, she takes sleeping medication. *Id.*

Plaintiff has a history of depression. *Id.* Some days she gets sad and does not want to be around other people. *Id.* She has crying spells. *Id.* at 95. In the week before the hearing, she cried seven different times for no reason. *Id.* She has trouble with attention and concentration. *Id.* She does not pay attention unless she is in an unfamiliar place. *Id.* She can sometimes pay attention during a thirty-minute TV show. *Id.* at 96. But other times it is on and she has no idea what is going on. *Id.* She has a hard time concentrating to help her children with their homework. *Id.* at 95. She gets frustrated with them easily—within thirty minutes—and has to take breaks and walk away. *Id.* at 95-96.

Plaintiff sees Dr. Ballerene, a psychiatrist, and a therapist, Ms. Terri, at Samaritan Behavioral. *Id.* at 99. She used to see Ms. Terri once a week. *Id.* When Dr. Ballerene asked if she was doing better getting out of the house, Plaintiff told her yes, she was trying to overcome her anxiety around other people. *Id.* at 100. For instance, she took her kids to Dick's Sporting Goods. *Id.* However, because there were so many people, Plaintiff had to go to her car to calm herself down before she could complete her purchase. *Id.* She also took her kids to the park. *Id.* That went much better because there were not many people there. *Id.*

Plaintiff lives in a house with her two children—ages 11 and 15 (at the time of the hearing). *Id.* at 85. She and her husband are separated. *Id.* She is able to drive except

when her anxiety is really high or she gets depressed. *Id.* at 85-86. She generally only drives to the grocery store or to take her kids to school. *Id.* at 86. If she is unable to drive, her father drives the kids to school. *Id.* at 85.

During an ordinary day, she gets up, gets her kids up, lets the dog out, and then takes her kids to school if she can. *Id.* at 98. When she gets home, she does what she can until the pain gets too bad and then she rests. *Id.* It is then usually time to pick her kids up. *Id.*

Plaintiff does not lift anything heavier than a gallon of milk. *Id.* at 96. For the past two years, she has only gotten between three and four hours of sleep per night. *Id.* During the day, she sometimes falls asleep for thirty minutes to an hour. *Id.* at 96-97. She is able to take care of her own personal needs. *Id.* at 97. But there are some days where she does not shower because she just sits, does not move, and wants everyone to leave. *Id.* She spends two to three days a week in bed all day or on the couch. *Id.* She does some chores during the day when she can. *Id.* at 98. But she has to take breaks when her pain is too bad. *Id.*

Since June 2011, Plaintiff has had one job as a cashier at a drive-through. *Id.* at 87. They let her go because the medications she was taking were affecting her ability to communicate with customers. *Id.* Prior to that job, she worked for Action Rubber, running heavy equipment. *Id.* at 98. They tried to let her work from home but eventually let her go because of the medication she was on. *Id.* at 98-99.

Plaintiff does not think she could show up for work five days a week without her mental issues causing her problems. *Id.* at 101. She explained that her dad has to take

her kids to school two or three times a week because she cannot. *Id*. When she cannot take them, it is usually because she gets shaky, agitated, and feels like her heart will pound out of her chest. *Id*. Other times, she cannot get out of bed because of pain. *Id*.

**B.  Medical Opinions**

*i.   Ellen W. Ballerene, M.D.*

In October 2015, Plaintiff's treating psychiatrist, Dr. Ballerene, completed a medical functional capacity assessment. *Id.* at 1693-94. She opined Plaintiff was markedly limited in her abilities to carry out detailed instructions, interact appropriately with the general public, travel in unfamiliar places or use public transportation, and complete a normal workday or workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* at 1693. She is moderately limited in several additional areas, including, for example, her ability to understand and remember detailed instructions, work in coordination with or proximity to others without being distracted by them, and set realistic goals or make plans independently of others. Dr. Ballerene concluded that Plaintiff was "unable to do work for benefits due to panic attacks." *Id.*

Dr. Ballerene completed a second medical functional capacity assessment in September 2016. *Id.* at 1691-92. Her opinions generally remained the same. However, she added that Plaintiff's ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances was markedly limited (she previously opined Plaintiff was moderately limited in that area). *Id.* at 1691, 1693.

6

Additionally, Plaintiff was moderately limited in her ability to make simple work-related decisions. *Id.*

   ii.  *Vijaykumar B. Balraj, M.A., Ph.D.*

Dr. Balraj evaluated Plaintiff on May 13, 2016. *Id.* at 860-61. He noted that Plaintiff reported low back pain with left-sided pain radiating into her lower extremity secondary to degenerative disc disease and scoliosis. *Id.* at 860. Her pain is constant and unremitting, with varying levels of intensity. Plaintiff ambulated without assistance but her gait was slow and antalgic. *Id.*

Dr. Balraj indicated that Plaintiff's psychological history includes PTSD, depression, and anxiety. *Id.* She reported that with medication, all three are "under good control." *Id.* Dr. Balraj noted that she scored a fifteen on the Beck Depression Inventory, indicating mild depression. *Id.* She endorsed moderate levels of anxiety on the State-Trait Anxiety Inventory. *Id.* She has occasional sleep onset and maintenance difficulties but generally gets approximately four to seven hours of sleep per night. *Id.* He concluded, pending a clear tox screen, that Plaintiff is "an appropriate candidate for all modalities of pain management treatment, including opiate/narcotic medication treatment." *Id.* at 861.

   iii.  *Joseph Edwards, Ph.D., & Kristen Haskins, Psy.D.*

Dr. Edwards reviewed Plaintiff's records in May 2015. *Id.* at 114-29. He found that she has four severe impairments—spine disorders, major motor seizures, affective disorders, and anxiety disorders—and one non-severe impairment, other fracture of bones. *Id.* at 121. He opined that Plaintiff has a moderate restriction of activities of daily

living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, and pace; and no episodes of decompensation. *Id.* She is able to "perform 1-3 step routine low stress tasks that do not involve strict time or production quotas and that involves some occasional flexibility for shift and breaks due to fluctuating symptoms." *Id.* at 126. Further, she cannot work with the general public and can only have occasional and superficial interactions with coworkers and supervisors. *Id.* She is able to "work in settings where major changes are explained ahead of time and implemented gradually." *Id.* at 127.

In July 2015, Dr. Haskins reviewed Plaintiff's records and agreed with a lot of Dr. Edwards' opinions. *Id.* at 148-61. However, she opined Plaintiff had no restriction of activities of daily living. *Id.* at 153. Further, Plaintiff "has the ability to attend and concentrate in a work setting with short cycle tasks and at most moderate pace where [she] can work away from others." *Id.* at 158. She "has the ability to adapt to routine changes in the work setting that has at most moderate time and production demands." *Id.*

### III. <u>Standard of Review</u>

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from

performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or

9

deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV. The ALJ's Decision

As noted previously, it fell to ALJ Kenyon to evaluate the evidence connected to Plaintiff's application for benefits. He did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

- Step 1: Plaintiff has not engaged in substantial gainful employment since June 10, 2011.

- Step 2: She has the severe impairments of degenerative disc disease of the lumbar spine, a history of seizures, depression and anxiety/post-traumatic stress disorder.

- Step 3: She does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

- Step 4: Her residual functional capacity, or the most she could do despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consists of "light work … with the following additional limitations: (1) occasional crouching, crawling, kneeling, stooping and climbing of ramps and stairs; (2) no climbing of ladders, ropes and scaffolds; (3) no work around hazards such as unprotected heights or dangerous machinery; (4) no driving of automotive equipment; (5) limited to performing unskilled, simple, repetitive tasks; (6) occasional interpersonal contact with coworkers and supervisors; (7) no public contact; (8) no fast paced production oriented work or jobs which involve strict production quotas; and (9) limited to performing jobs which involve very little, if any, change in the job duties or work routine from one day to the next."

- Step 4: She is unable to perform any of her past relevant work.

Step 5:     She could perform a significant number of jobs that exist in the national economy.

(Doc. #5, *PageID* #s 56-70).  These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability.  *Id.* at 70.

## V.     Discussion

Plaintiff contends that the ALJ reversibly erred in evaluating the medical-source opinions—most notably, the opinion of Plaintiff's treating psychiatrist, Dr. Ballerene.  The Commissioner disagrees, maintaining that the ALJ properly weighed the medical opinions.

### A.     Medical Opinions

Social Security Regulations require ALJs to adhere to certain standards when weighing medical opinions.  "Key among these is that greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians, commonly known as the treating physician rule."  *Rogers,* 486 F.3d at 242 (citations omitted).  The rule is straightforward:

> Treating-source opinions must be given "controlling weight" if two conditions are met: (1) the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) the opinion "is not inconsistent with the other substantial evidence in [the] case record."

*Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting in part 20 C.F.R. § 404.1527(c)(2)); *see Gentry*, 741 F.3d at 723.

If the treating physician's opinion is not controlling, "the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length,

11

frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors." *Rogers*, 486 F.3d at 242 (citing *Wilson*, 378 F.3d at 544).

The Regulations also require ALJs to provide "good reasons" for the weight placed upon a treating source's opinions. *Wilson*, 378 F.3d at 544. This mandatory "good reasons" requirement is satisfied when the ALJ provides "specific reasons for the weight placed on a treating source's medical opinions." *Id.* (quoting Soc. Sec. R. 96-2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). The goal is to make clear to any subsequent reviewer the weight given and the reasons for that weight. *Id.* Substantial evidence must support the reasons provided by the ALJ. *Id.*

ALJ Kenyon assigned little weight to Dr. Ballerene's opinion and gave several reasons. He found that Dr. Ballerene's opinion was "not fully consistent with [Plaintiff's] treatment records from Samaritan Behavioral Health." (Doc. #5, *PageID* #67). According to Plaintiff, the ALJ "erred by imposing a 'fully consistent' requirement on Dr. Ballerene's opinions." (Doc. #8, *PageID* #1708).

Plaintiff's argument lacks merit. Before the ALJ discussed specific opinions, he laid out the standard for evaluating opinions. He correctly observed that, if a treating source's opinion is well supported and not inconsistent with other substantial evidence, it must be given controlling weight. (Doc. #5, *PageID* #66); *see* 20 C.F.R. § 404.1527(c)(2). If the treating source's opinion is not entitled to controlling weight, then the ALJ must consider several factors, including consistency. (Doc. #5, *PageID* #66); *see* 20 C.F.R. § 404.1527(c)(4).

The ALJ did not summarily conclude that her opinion was not fully consistent with the record; he explained, "These records show only mild social phobia, which is adequately accommodated by the restriction against public contact." (Doc. #5, *PageID* #67). Earlier in his opinion, the ALJ assessed Plaintiff's social phobia in more detail. The ALJ found that Plaintiff's allegations—that she gets anxious and panicky in crowds—were inconsistent with her statements. For instance, although Plaintiff said she had a panic attack at the Air Force Museum and at fireworks on the Fourth of July, treatment notes reveal that she also reported going to a Dayton Dragons game, bike week, Skyzone, the Montgomery County Fair, her son's football games, and Gatlinburg, Tennessee on vacation. *Id.* (citing Exh. 4F/39; 14F/164, 204, 214; 18F/4 [Doc. #5, *PageID* #575, 1026, 1066, 1076, 1460]). The ALJ properly considered whether Dr. Ballerene's opinion was consistent with treatment records. Further, substantial evidence supports his conclusion that Dr. Ballerene's opinion is not consistent with Dr. Ballerene's opinion.

The ALJ also discounted Dr. Ballerene's opinions because they "seem based upon an unqualified acceptance of [Plaintiff's] subjective complaints." *Id.* at 67. Plaintiff argues that this constitutes error because Dr. Ballerene's treatment notes include objective observations. She directs the Court's attention to four examples. (Doc. #8, *PageID* #1710) (citing Doc. #5; *PageID* #s 560, 576, 1461, 1468). On each of the pages cited by Plaintiff, Dr. Ballerene comments on several areas of Plaintiff's mental status, including, for example, appearance, speech, recent and remote memory, and insight/judgment. According to Plaintiff, Dr. Ballerene indicates that Plaintiff has

abnormal and psychotic thoughts and variable attention and concentration. Although Plaintiff is correct that under the area of concentration and attention, Dr. Ballerene notes "variable," without further explanation, this note says little in support her opinions. And, Plaintiff misinterprets Dr. Ballerene's note regarding thought content. Specifically, Dr. Ballerene noted: "THOUGHT CONTENT (Abnormal/Psychotic?): No SI/No HI; No delusions or hallucinations …." (Doc. #5, *PageID* #576). This does not indicate Plaintiff has abnormal or psychotic thoughts; it indicates that she does not. Indeed, Plaintiff does not have suicidal or homicidal ideation and no delusions or hallucinations.

Plaintiff does not point to any other objective findings. Most of Dr. Ballerene's notes focus on what Plaintiff told her. *See* Doc. #5, *PageID* #378 ("energy low some days, other days lots of energy and hard to sit still, not impulsive …. Feels down most of the time, but not all the time."); Doc. #5, *PageID* #559 ("Very busy. But overall doing OK."). Accordingly, given the lack of objective notes in the record, the ALJ did not err in discounting Dr. Ballerene's opinion because of her reliance on Plaintiff's subjective complaints. *See Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 156 (6th Cir. 2009) ("substantial evidence supports the ALJ's determination that the opinion of Dr. Boyd, Poe's treating physician, was not entitled to deference because it was based on Poe's subjective complaints, rather than objective medical data.").

The ALJ also found that Dr. Ballerene's opinions are "not supported by the level of psychological treatment [Plaintiff] has received." (Doc. #5, *PageID* #67). The ALJ notes that her treatment has consisted of outpatient counseling and medication; she has

14

not been hospitalized for her mental impairments. Plaintiff argues that this constitutes error because ALJs are not mental health experts. (Doc. #8, *PageID* #s1709-10).

It was not improper for the ALJ to consider whether Plaintiff's level of psychological treatment supports Dr. Ballerene's opinions. *See* 20 C.F.R. § 404.1527(c); *Lester v. Soc. Sec. Admin.*, 596 F. App'x 387, 389 (6th Cir. 2015) ("The ALJ reasonably discounted Dr. Perry's medical opinion on the basis that it conflicted with other substantial evidence in the record. Dr. Perry's proposed limitations were inconsistent with his own treatment notes from the relevant period, which generally showed that Lester was receiving conservative treatment and that he was not suffering from disabling impairments."). However, substantial evidence does not support the ALJ's conclusion that Plaintiff's level of treatment does not support Dr. Ballerene's opinions. As Plaintiff correctly observed, the ALJ is not a mental-health expert. To the extent the ALJ erred in reaching this conclusion, it is harmless error because the ALJ provided other good reasons, supported by substantial evidence, for discounting Dr. Ballerene's opinions.

The court's review of an ALJ's decision is limited to determining whether the ALJ applied the correct legal standard and whether the ALJ's decision is supported by substantial evidence. *Gayheart,* 710 F.3d at 374. In the present case, ALJ Kenyon applied the correct legal standards to determine that Dr. Ballerene's opinions are entitled to little weight. The ALJ's decision is supported by substantial evidence.

Plaintiff contends that the ALJ improperly imposed a more rigorous standard on Plaintiff's treating psychiatrist's opinion than the opinion of Dr. Balraj, an examining consultant. According to Plaintiff, "the ALJ applied the treating source 'not inconsistent'

controlling weight to Dr. Balraj's non-treating source opinion. Moreover, while the ALJ was quite critical of Dr. Ballerene's opinions, he failed to seriously scrutinize Dr. Balraj's opinion." (Doc. #8, *PageID* #s 1708-09).

Plaintiff's argument lacks merit. The ALJ did not scrutinize Dr. Balraj's opinion more than he scrutinized Dr. Ballerene's. He acknowledged that Dr. Balraj only examined Plaintiff once. Further, he properly considered the consistency of Dr. Balraj's opinion with the record as a whole. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). And, for those reasons, the ALJ only assigned Dr. Balraj's opinion "moderate weight." (Doc. #5, *PageID* #s 67-68).

Plaintiff also contends that the ALJ erred in rejecting the opinion of record-reviewing psychologist, Dr. Edwards. Specifically, Dr. Edwards opined that Plaintiff was limited to jobs that would allow for "some occasional flexibility for shifts and breaks due to fluctuating symptoms." *Id.* at 126. The ALJ did not include the limitation, concluding that it "seems to be a matter of preference for [Plaintiff], rather than a true psychological necessity." *Id.* at 68. Plaintiff contends that this is significant because the vocational expert testified that a hypothetical individual who required an increased number of breaks would be unable to sustain competitive employment. But Plaintiff misinterprets Dr. Edwards' opinion. He did not opine that Plaintiff would need *additional* breaks; he opined that she would occasionally need flexibility for shifts and breaks.

Further, Plaintiff asserts that Dr. Edwards' opinion is not inconsistent with Dr. Ballerene's opinion. Although Plaintiff does not specifically identify which of Dr.

16

Ballerene's opinions it is consistent with, it is likely (based on Plaintiff's attorney's questions to the vocational expert) that Plaintiff is referring to either (1) Dr. Ballerene's opinion that Plaintiff was *markedly limited* in her ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, or (2) her opinion that Plaintiff was *markedly limited* in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. *Id.* at 1691, 1693. However, Dr. Edwards' (and Dr. Haskins') opinions are inconsistent with Dr. Ballerene's.

Dr. Edwards and Dr. Haskins found that there was *no evidence of limitation* in Plaintiff's ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. *Id.* at 125, 157. Further, they both found Plaintiff was *moderately limited* in her ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. *Id.* at 126, 157. Additionally, Dr. Haskins, who reviewed Plaintiff's records after Dr. Edwards, did not opine that Plaintiff would need flexibility with shifts and breaks. *Id.* at 158. Thus, her opinion supports the ALJ's decision not to include Dr. Edwards' flexibility limitation.

ALJ Kenyon provided good reasons for assigning the examining consultant's opinion moderate weight and for assigning the State agency psychologists' opinions partial weight. Substantial evidence supports those reasons.

## IT IS THEREFORE RECOMMENDED THAT:

1. The ALJ's non-disability decision be affirmed; and

2. The case be terminated on the Court's docket.


August 22, 2019                                         *s/Sharon L. Ovington*
                                                        Sharon L. Ovington
                                                        United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).